Okay, the next case is number 15-1248, Poly-America, L.P. v. API Industries, Inc. Thank you, Your Honors. This case raises the very interesting question of how frequently a feature must be visible in order to be of concern for the ordinary observer analysis. This court in Contessa, Keystone, and Doormaster drew the outer boundaries. If a feature is always visible, even if only visible at one point during the normal use of… Could we start at a more, I guess, elemental level? What would you say is the contribution to the ornamental arts with this patent? How did this patent promote the progress of the ornamental arts? I admit I had not thought about that question, Your Honor. The overall design of the container is not one that is found in the prior art, and in particular, the shape of the perforated opening was something unique, not found in the prior art. The trapezoidal opening on the front panel? Yes and no. No, my statement was not meant to refer to simply the fact that it was a trapezoidal shape. There was evidence in the record below that trapezoidal shapes had been used for perforated openings in the past. My statement was referring to the exact shape of the rounded finger push portion. The tab that's at the end of the trapezoidal opening? Yes, Your Honor. This design patent is fairly minimalist, wouldn't you say? Yes, Your Honor. And the design patent very clearly displays that what we have on our hands here is a two-feature design for a container, for a box. One feature is the trapezoidal opening on the front panel, and then the other feature is the tabs and slots on the top of the box. I'm wondering, does it seem strange to you that you can present your two-feature design to the patent office and rely on those two features in order to get a patent, but then when it comes to litigation and infringement, tell the court that, well, ignore one of the two features, throw that out. All that really matters for infringement purposes is one of the two features. Your Honor has identified a definite tension between the way patents are claimed and patented in the Patent and Trademark Office and the ordinary observer analysis. I believe that it is still appropriate to disregard those features that are not visible during the normal use of the product on a regular or general basis for two reasons. First, to the extent that you have that tension, the tension needs to be resolved in favor of the ordinary observer analysis, and that is because the whole point of having design patents is to make sure that ordinary observers are not tricked into buying something that's substantially similar to something else. So, set aside for the moment that the USPTO may want to do its thing differently. I'm not an expert in that area. So, hypothetically, if the point of novelty for your design or your box is something that, in your view, in normal use would be hidden, what does that mean? Does that mean you shouldn't be relying on it for patentability purposes, for trying to get a patent on the design? Well, I don't know the answer to that question, but I can tell you that at the end in litigation context, it will come full circle, because just as in the utility patent context, if a patent holder takes a claim during claim construction and wins on that, then it lives with that claim construction on the validity back end of the litigation. We're talking about utility patents, right? Yes, I'm analogizing to the utility patent context. So, in the design patent context, if, as here, a patent holder has in its design patent the feature that you addressed, the top flaps, tabs, and slots, but then takes the position, as it has here, that that is not a generally visible feature during the normal use of the particular accused product in patented design at issue, then that patent holder is going to have to live with that when it comes to the court's validity analysis, so that, in other words, the patent holder wouldn't be able to say, the reason my design is not obvious is because of the tabs and slots and heights. Couldn't do that anymore, because you've said that the reason that you aren't going to see the tabs, slots, and heights of the flaps. So, in the litigation context, I do not believe there is a tension. But your honor's point about the way that you go and get a patent in the PPO, and that you can draw something that, in fact, then, in the normal use of the product, isn't seen, there is that tension. Maybe the more rational way to approach the law is, if you present figures like this to the patent office, showing the tabs, then that's almost a concession that the normal use for a design like this in the marketplace is that people will see these tabs in one form or another. And so, therefore, just as it matters for validity, patentability purposes, it likewise matters for infringement purposes. Yes, your honor. The law could develop that way. In this case, there was no evidence that consumers would generally or ordinarily open the container from the top. API's experts said that based on the way he dealt with boxes, his personal experience, he sometimes opened boxes from the top, and so that's where he's getting the idea that you open it from the top. The three polymeric employees who had actually opened the box, opened it from the perforated opening, and certainly I, when I get a box of baggies or Kleenex, I use the perforated opening. But certainly, your honor, this court could make that the rule. And when I have one of these boxes that has the perforation going all the way around to the other panel, I open up my flap all the way across both panels. And that point, your honor, that different people may use the box differently or open it differently, is one that I think creates the interesting question in this case, which is how frequently does an ordinary observer need to open or destroy of an item in a particular way to reveal an otherwise concealed feature? And in Contessa and Doormaster and Keystone, those were easier cases because the feature at issue was always visible at some point during the normal use. And the corollary implication from those cases is that if it's never visible during the normal use, it shouldn't be considered. Here, the only testimony that it was ever visible was from API's expert. And what he said was someone could open it from the top in a way to preserve the tops and flaps. He also conceded that he didn't know how many people would because he didn't do any testing that would give him any sense of how often destruction in the particular way to flatten it out and force open the top wouldn't destroy those features, or that it would be opened in a particular way. Is there a case that you know of where this court, or maybe another court, has excluded one of the features of the design patent for infringement analysis? No, Your Honor. I don't believe any court has been faced with this particular set of circumstances where someone argued that a feature was – I mean, litigants have argued that features were concealed. But the arguments have been they were concealed on the shelf, or they were concealed because – and then the court said, no, it always becomes visible. I don't know of a case in this context where the litigants are saying it's possible that it might be revealed, but one side says I've got some evidence that it won't be revealed and the other one says I've got evidence that it might be revealed, and there's no evidence about the frequency or the generality or regularity. So it is an interesting question for this court to resolve. One last point on this frequency argument, and then I will move over to the expert point. Given that the purpose of design patent law is to prevent ordinary observers from being deceived by buying something substantially similar, Polymerica does not believe it would be appropriate for the standard to be that just because one or a few ordinary observers could use or destroy a product in such a particular way as to make a regularly concealed feature visible, that that would be enough, because if that was the standard, then you could defeat a claim of design patent infringement anytime the designs are not identical. And this court has already said you don't have to have identical designs. And the reason I say that is because it's always easy to imagine that one person might use a product in a way that most others would not, or destroy it in a way most others would not. So with that, let me turn to the second basis that Polymerica has cited for reversal of the district court's opinion, and that is the admissibility of API's expert testimony. It is an abuse of discretion standard. Polymerica believes that the district court abused its discretion in denying the motion to exclude because the district court did not consider the second prong of the two-part test under Rule 702. In the district court's opinion, the district court lays out the two-part test. You need specialized or scientific knowledge, and you need reliable methodology. The district court then says Collins had the specialized knowledge that would help the trier of fact because he was an expert in packaging, had worked with corrugated packaging, even though none of the corrugated packaging had perforated openings, and had engaged in consumer research even though none of that consumer research was ever with corrugated packaging. The district court never analyzed whether it was reliable methodology. Polymerica in the lower court had argued the methodology was not reliable, but this is just his personal opinion because under Kumho-Tier, one of the indicators of reliable methodology or not is whether the expert employs the same methodology in the non-litigation context that it does in the litigation context. Here, API's expert conceded that whenever he wanted to know what consumers were going to think or perceive in the non-litigation context, he conducted some sort of consumer research, surveys, testing, interviews. But here, he did not. He also conceded that you can't predict what consumers will perceive. That's what his past research had told him. In light of that, it was an error to admit his testimony. Without it, there was no testimony regarding the visibility of the top tabs and slots, only evidence on the other side of the question. I'll stop there. Thank you, Your Honor. Okay. Thank you, Sarah. Mr. Blumenfeld? Thank you, Your Honor. Jack Blumenfeld for Dependent FOB API. Figures 8 to 13 of the 719 patent are six figures with top flaps in what is called an open configuration with equal height flaps, tabs on the back flap, slots on the front flap. Figures 8, 11, and 12 were amended to more clearly illustrate the design during prosecution. That's at A1041. There is an open configuration as part of the design, and that is normal use. It has a closed configuration and open. But one point I'd like to make, because PolyAmerica has never addressed this, is that even in the closed configuration, you can see the tabs and the slots. And that's in figures 1, 2, and 6. They're always visible, because when you close the open configuration, the tabs go into the slots, and you can see them. That's something Mr. Collins testified to. They said, oh, in their brief, they quoted something where he said, aren't all these boxes going to look identical? It's at 845. And they quote him saying, yeah, they look identical. The next answer that he gave was, except if they have tabs. They didn't put that in their brief. The tabs are there. The patent was on a design for open or closed configurations at the top by using the tabs and the slots. All of the ornamental features of that top opening configuration are part of the patent. And Poly never argues and can't argue that there's any substantial similarity between that design and what API is doing, because it can't. The design is entirely different. And in fact, the tops of API's boxes are always visible, whether they're opened or closed. You never see the even height flaps. You never see the tabs. You never see the slots. But the reason isn't because something isn't visible. The reason you don't see them in API's boxes is because they aren't there. We don't have them. So what they have is a patent which says, here's six drawings showing an open configuration, and API doesn't have that open configuration. It just isn't there. When the box is closed, you won't see those flaps of even height. You won't see the tabs and slots that are shown in figures 1, 2, 6, 8, and 13. And when the box is open, you won't see them either because they're not there. It's a completely different design, and that's really the issue. Now, I don't think there's anything terribly surprising in the world we live in, that people open cardboard boxes and that people recycle boxes. One of the things Mr. Collins said was, in Massachusetts, where he lives, they're required to recycle boxes. The notion that we had to prove some frequency by which consumers who use these boxes flatten them and throw them in the trash. We had an expert who came in and said, I've been a packaging designer for 40 years. I know all kinds of packages. I've worked with corrugated cardboard. I've done consumer testing. In my opinion, the tabs and slots would be visible to the consumer in the store, and they would be because they're shown even in the closed configuration, that all the boxes look the same when they're sealed unless they have tabs, that consumers would open the boxes, and if there were top flaps of equal height, if there were tabs and slots, they would see them. Consumers would flatten and recycle these. There's nothing about any of that that is very surprising, and that the tops would be visible. There's one other point that I would like to go back to, and that is the district court's decision, because there is almost nothing in PolyAmerica's brief about the district court's decision, but the district court looked at the overall design. The district court concluded that the patented and accused designs are not substantially the same after looking at all the features. She looked at the front opening. She looked at the top flaps. She looked at all the ornamental features. She looked at two pieces of prior art. She did what she said was a side-by-side comparison, which is clearly the comparison that you're supposed to do, and she concluded that the front opening of the accused design was more like the prior art than like the design of the patent, and the top flaps, quote, create a very different visual impression. And then she concluded by saying, altogether then, the claimed and accused designs would not appear substantially the same to an ordinary observer. And on the side-by-side comparison, it's interesting, because we did a side-by-side comparison in our brief below on summary judgment. We did a side-by-side comparison in our brief here, and if you look at page 11 of our brief, we have the drawing with all the features next to our box, totally different. The judge, the district judge, did a side-by-side comparison. She reached the same conclusion. She looked at all the ornamental features. She found there was nothing substantially similar. The one party here who's never done a side-by-side comparison is the plaintiff, PolyAmerica. So they have the burden of proving infringement. They've never done a side-by-side analysis, not below, not on appeal. And there's a reason for that, because when you look at these side-by-side, they are very, very different designs. And one of the reasons they're different designs is because the front opening is different. Ours opens across the front and around the right side, unlike theirs, shown in many figures of their patent. And second, they have the open configuration of the top flaps, which we don't have. So there are two very basic reasons why the designs are different. Judge Robinson recognized that. We've done the side-by-side comparison, and PolyAmerica has never done that analysis. All it says is, well, one of our employees didn't even notice that you could open it all the way around the right side. That's not evidence to get you to a jury. The ordinary observer test is something that judges do in a lower court, in this court. It's not something that you can get by on by saying, well, I have a lawyer employee who says he didn't even notice, and that's enough to get to a jury. And unless the court has questions, that's all I have to say about it. Okay. Thank you, Mr. Blumenfeld. Ms. Harris? Your Honors, API contends that Collins did not say they always look the same when on the shelf. That's not true. The court turns to Appendix 845. Collins did, in fact, say they would all look the same when they're closed and then when pressed, because he did add, but you could see the tabs and slots when they're open. And then he was pressed and said, well, that's only if you open it in this very particular way to preserve on destruction or when you're opening, and he said yes. So the issue really is the one that Judge Chen identified at the outset of the case, which is do you make a blanket rule that says if it's in the pictures, then you can't claim that it's not seen during the normal use, or do you have the litigants produce evidence of what is visible during the normal use? That is the heart of the case. With regard to the expert having all this general packaging expertise, it's undisputed that he worked in the packaging industry for 40 years. That's not the issue. The issue is whether, as in the lower courts, when an expert says, I have had experience with kitchen products for 40 years, does he then get to opine as to what ordinary observers will see when it's one patented peeler at issue? And Sheff and Kaur, Pwang and Bush all say no, because the expert is not an ordinary observer. The United States Supreme Court already said in Gorham that an expert is not the person to be deceived. So he cannot just, from his own personal opinion, say it. He has to point to something specific in his experience. I watch people using similar boxes with similar openings on both ends, and I know that people will open it this different way. The expert in this case had no such experience. Finally, with regard to the substantial similarity and side-by-side comparison, it is just not true that Polymerica didn't do it in the underlying briefs. Those briefs are not in the appendix. They are in the record. There is side-by-side pictures. The whole dispute goes back to Judge Chen's point, which is when Polymerica does the side-by-side, it's showing a closed box where it's just open on the front panel compared to the patent design, whereas the other API is showing open with tops preserved, which when it's taped up and you open it, it wouldn't even look like that. But that's the only difference. There was sufficient evidence for the district court to find that the two were substantially similar. It was not just the Polymerica's employees. It was API's CFO saying that they were out of town. Thank you very much, Your Honor. Okay. Thank you, Ms. Harris. Thank you, Mr. Greenfield. The case is taken into submission. Thank you. That concludes the argued cases for this morning. All rise. The honorable court is adjourned until tomorrow morning. It's an o'clock a.m.